No. 25-5335

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT
———————

ELIZABETH DE COSTER ET AL.,
ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED,
*Plaintiffs and Respondents,*

v.

AMAZON.COM, INC.,
*Defendant and Petitioner.*
———————

On Appeal from the United States District Court
for the Western District of Washington,
No. 2:21-cv-00693
Honorable John H. Chung
———————

**MOTION FOR LEAVE TO FILE REPLY IN SUPPORT OF PETITION
FOR PERMISSION TO APPEAL ORDER GRANTING CLASS
CERTIFICATION PURSUANT TO FED R. CIV. P. 23(f)**
———————

Eamon P. Joyce
Ausjia L. Perlow
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
ejoyce@sidley.com
aperlow@sidley.com

David R. Carpenter*
Collin P. Wedel
SIDLEY AUSTIN LLP
350 South Grand Avenue
Los Angeles, California 90071
Telephone: 213-896-6000
drcarpenter@sidley.com
cwedel@sidley.com

Kathleen Mueller
SIDLEY AUSTIN LLP
1501 K Street NW
Washington, DC 20005
kmueller@sidley.com

*Attorneys for Defendant and Petitioner Amazon.com, Inc.*

Additional Counsel for Petitioner

Karen L. Dunn
William A. Isaacson
Amy J. Mauser
Kyle Smith
DUNN ISAACSON RHEE LLP
401 Ninth Street, NW
Washington, DC 20004-2637
kdunn@dirllp.com
wisaacson@dirllp.com
amauser@dirllp.com
ksmith@dirllp.com

Meredith Dearborn
DUNN ISAACSON RHEE LLP
345 California Street
Suite 600
San Francisco, CA  94104-2671
mdearborn@dirllp.com

Pursuant to Federal Rule of Appellate Procedure 27, Amazon respectfully requests leave to file the accompanying reply brief attached hereto as **Exhibit A**. This Court routinely grants leave to file reply briefs in support of Rule 23(f) petitions. *See, e.g.*, *Brauer v. ExamOne World Wide, Inc., et al.*, No. 25-590, Dkt. 16 (9th Cir. Feb. 27, 2025); *Lytle, et al. v. Nutramax Lab'ys., Inc.*, *et al.,* No. 22-80047, Dkt. 14 (9th Cir. Jul. 13, 2022); *Olean Wholesale Grocery Coop., et al. v. Bumble Bee Foods LLC*, *et al.,* No. 19-80108, Dkt. 22 (9th Cir. Dec. 20, 2019); *Grodzitsky, et al. v. Am. Honda Motor Co.*, No. 17-80238, Dkt. 11 (9th Cir. Mar. 29, 2018); *Kaur v. Things Remembered, Inc.*, No. 16-80060, Dkt. 14 (9th Cir. July 20, 2016); *Kozik, et al. v. Toshiba Corp.*, *et al.*, No. 14-80147, Dkt. 9 (9th Cir. Jan. 14. 2015); *Henderson, et al. v. JPMorgan Chase Bank*, No. 13-80073, Dkt. 5 (9th Cir. June 21, 2013); *Carbral v. Supple LLC*, No. 13-80030, Dkt. 5 (9th Cir. May 30, 2013).

Good cause supports allowing the reply, including to respond to (1) misstatements of the nature of the legal issue involved and the relevant case law, *see* Proposed Reply (Ex. A) at 2, 3-5, (2) substantial liberties that respondents take with the record, *id.* at 5-

1

6, 9, 10-12, and (3) a baseless assertion that Amazon waived below an issue raised on appeal when, if anything, the procedural impropriety lies with respondents who raised a new argument in their district court reply brief that the district court then adopted for the basis of its decision, *see* at 8.

Accordingly, Amazon respectfully requests that the Court grant leave to file the accompanying reply brief.

Dated: September 9, 2025        Respectfully submitted,

                                  SIDLEY AUSTIN LLP

                                  By: */s/ David R. Carpenter*
                                    David R. Carpenter

                                  *Attorney for Defendant-Petitioner*

## CERTIFICATE OF COMPLIANCE

I am the attorney for Petitioner. This motion complies with Federal Rule of Appellate Procedure 27 and Circuit Rule 27-1 because it is under 20 pages and contains 285 words, excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6), as the motion has been prepared in a proportional typeface in 14-point Century Schoolbook font.

Dated: September 9, 2025  Respectfully submitted,

          SIDLEY AUSTIN LLP

          By: */s/ David R. Carpenter*
           David R. Carpenter

          *Attorney for Defendant-Petitioner*

# Exhibit A

No. 25-5335

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT
_____

ELIZABETH DE COSTER ET AL.,
ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED,
*Plaintiffs and Respondents,*

v.

AMAZON.COM, INC.,
*Defendant and Petitioner.*
_____

On Appeal from the United States District Court
for the Western District of Washington,
No. 2:21-cv-00693
Honorable John H. Chung
_____

REPLY TO ANSWER TO PETITION FOR PERMISSION TO
APPEAL PURSUANT TO FED R. CIV. P. 23(f)

Eamon P. Joyce
Ausjia L. Perlow
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
ejoyce@sidley.com
aperlow@sidley.com

David R. Carpenter*
Collin P. Wedel
SIDLEY AUSTIN LLP
350 South Grand Avenue
Los Angeles, California 90071
Telephone: 213-896-6000
drcarpenter@sidley.com
cwedel@sidley.com

Kathleen Mueller
SIDLEY AUSTIN LLP
1501 K Street NW
Washington, DC 20005
kmueller@sidley.com

*Attorneys for Defendant and Petitioner Amazon.com, Inc.*

Additional Counsel for Petitioner

Karen L. Dunn
William A. Isaacson
Amy J. Mauser
Kyle Smith
DUNN ISAACSON RHEE LLP
401 Ninth Street, NW
Washington, DC 20004-2637
kdunn@dirllp.com
wisaacson@dirllp.com
amauser@dirllp.com
ksmith@dirllp.com

Meredith Dearborn
DUNN ISAACSON RHEE LLP
345 California Street
Suite 600
San Francisco, CA  94104-2671
mdearborn@dirllp.com

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES.......................................................................iii

INTRODUCTION ................................................................................... 1

I.    THE PETITION RAISES A FUNDAMENTAL AND RECURRING ISSUE OF
WHETHER A CLASS MAY BE CERTIFIED BASED ON A MODEL THAT
IS DESIGNED TO FIND ANTITRUST INJURY EVEN FOR
TRANSACTIONS UNAFFECTED BY THE CHALLENGED CONDUCT ...... 3

    A. The Model Is Designed To Always Find Antitrust Injury and
Creates False Positives ............................................................ 3

    B. The District Court's Attempt To Modify The Class Definition
Highlights The Problems The Model Creates That Warrant
Review.................................................................................... 7

II.    PLAINTIFFS CANNOT ESCAPE THE VARIATION AND INDIVIDUAL
INQUIRIES RAISED BY THEIR THEORY OF LIABILITY AND MULTI-
STEP CAUSAL CHAIN................................................................. 11

CONCLUSION ..................................................................................... 13

CERTIFICATE OF COMPLIANCE....................................................... 15

CERTIFICATE OF SERVICE................................................................ 16

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Asacol Antitrust Litig.*,
  907 F.3d 42 (1st Cir. 2018) .................................................................. 10

*Chamberlan v. Ford Motor Co.*,
  402 F.3d 952 (9th Cir. 2005) .................................................................. 3

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013) ................................................................... 1, 5, 10

*Microsoft Corp. v. Baker*,
  582 U.S. 23 (2017) ................................................................................ 2

*Olean Wholesale Grocery Cooperative v. Bumble Bee Food
  LLC*,
  31 F.4th 651 (9th Cir. 2022) ............................................................. 2, 4

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
  725 F.3d 244 (D.C. Cir. 2013) .............................................................. 4

*TransUnion, LLC v. Ramirez*,
  594 U.S. 413 (2021) .............................................................................. 9

*Tyson Foods, Inc. v. Bouaphakeo*,
  577 U.S. 442 (2016) .............................................................................. 5

*In re Valve Antitrust Litig.*,
  2024 WL 4893373 (W.D. Wash. 2024) ............................................... 13

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ....................................................................... 12, 13

*Zamani v. Carnes*,
  491 F.3d 990 (9th Cir. 2007) ................................................................ 8

iii

## INTRODUCTION

Plaintiffs' Answer cannot evade the fundamental and recurring issues raised by the Petition. To certify a class, plaintiffs needed common evidence capable of showing that Amazon's alleged practices caused 2.5 million sellers to charge inflated prices in 34 billion transactions to 300 million consumer class members. But plaintiffs' purported classwide proof of injury is a theoretical model that *assumes* inflated fees and prices for every single transaction—generating false positives and masking variation across these 34 billion transactions.

Plaintiffs fail to cite any circuit precedent—from this Court or elsewhere—approving of such a model to satisfy Rule 23. They do not deny that the model always finds higher fees and prices, even with random data, and that no published work has applied the model to analyze real-world data. Allowing plaintiffs to rely on theoretical models that reach only one result would remake antitrust and class action jurisprudence by eliminating plaintiffs' burden of showing that class members were actually harmed, contravening Rule 23 and long-standing antitrust law.

Whether such model is "capable" of supporting class certification is a *legal* question—not a fact-bound one. *Comcast Corp. v. Behrend*, 569 U.S. 27, 36 n.5 (2013). It is a fundamental and recurring question for antitrust class actions, as reflected in *Olean Wholesale Grocery*

1

*Cooperative v. Bumble Bee Food LLC*, 31 F.4th 651, 666 n.9 (9th Cir. 2022) (en banc), and decisions by sister circuits.

The model's problems are symptomatic of a further issue: the alleged *de facto* "anti-discounting policy" comprises different practices, countless communications, and seller responses that varied over time, in form, and in application to different products sold in billions of transactions in different channels by different kinds of sellers across variable competitive conditions. Plaintiffs do not deny that variation, which raises individual issues at each step in their multi-step causal chain.

It does not suffice to say review can wait until after trial. Rule 23(f) exists because of the pivotal role of a certification decision and the pressure to settle notwithstanding meritorious defenses, especially in a case as sweeping as this. Absent immediate review, plaintiffs will continue using such theoretical models in the meantime (including in related, pending cases),[1] and here, the certification decision sets the stage for an unfair trial where it will be impossible for Amazon to raise individual defenses to 300 million class members' claims. Immediate review is warranted, consistent with *Microsoft Corp. v. Baker*, 582 U.S.

---

[1] *E.g.*, *Frame-Wilson v. Amazon*, No. 2:20-cv-00424 (W.D. Wash.) (related case by Wal-Mart and eBay customers).

23 (2017), and *Chamberlan v. Ford Motor Co.*, 402 F.3d 952 (9th Cir. 2005) (per curiam).[2]

## I. THE PETITION RAISES A FUNDAMENTAL AND RECURRING ISSUE OF WHETHER A CLASS MAY BE CERTIFIED BASED ON A MODEL THAT IS DESIGNED TO FIND ANTITRUST INJURY EVEN FOR TRANSACTIONS UNAFFECTED BY THE CHALLENGED CONDUCT.

### A. The Model Is Designed To Always Find Antitrust Injury and Creates False Positives.

Plaintiffs admit Pathak's model shows increased fees and prices "on *every* transaction." Ans.17. That is by design: the model is mathematically programmed to demonstrate the theory that a hypothetical PMFN causes higher fees and prices. Pet.13-14. Plaintiffs do not dispute that even when the model is applied to their expert's but-for world of competition or *random data,* the model finds higher fees and prices every single time. *Id.* But it is not and cannot be true that the challenged practices would raise consumer prices in every transaction. The district court itself found that would not be true where sellers use focal-point pricing, and the Petition cites other examples—which plaintiffs do not refute—where a higher or lower seller referral fee would not impact the price charged to consumers. Pet.17-18; Pet.App.24.

---

[2] Plaintiffs erroneously claim that interlocutory review is authorized in only "three circumstances," including if certification is a "death knell." Ans.1. *Chamberlan* says those circumstances are "not a rigid test," 402 F.3d at 960, and *Baker* confirms that circuit courts "wield unfettered discretion under Rule 23(f)," 582 U.S. at 31 (cleaned up).

Whether such a radical model that generates false positives is capable of proving classwide impact is an important and recurring issue warranting review.

Plaintiffs chastise Amazon for not addressing the district court's *Daubert* ruling. Ans.24. Amazon's Petition is not premised on *Daubert*; evidence may be admissible yet "not capable of answering a common question on a class-wide basis." *Olean*, 31 F.4th at 665. Even *admissible* expert evidence that assumes impact and always finds injury where none could exist is incapable of proving antitrust injury. *Id.* at 666 n.9; *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 252-53 (D.C. Cir. 2013).

Plaintiffs claim the district court found that "Pathak's opinion and modeling are not just theoretical, do not assume a conclusion of injury, and do not contain false positives." Ans.14. But the district court never made those specific findings; it merely describes Pathak's responses to Amazon's objections and concludes (without further explanation) that a jury could believe Pathak. Pet.App.25-38.[3]

As the Petition explained, the court erred in leaving this to the jury. Pet.16. It is the district court's job to resolve expert disputes to determine whether the Rule 23 requirements are met. *Olean*, 31 F.4th at 666.

---

[3] The *Daubert* ruling similarly declined "to take a side" on "a dispute between experts on complex economic modeling," allowing it to go to the jury. Resp.App.17.

Whether a model is capable of proving injury for all class members is "no more a question of fact than what [a court's] opinions hold." *Comcast*, 569 U.S. at 36 n.5.

The district court does not explain why a plaintiff should be permitted to prove she was injured by calling an expert to testify that if the jury finds the defendant's conduct was a *de facto* PFMN, then a fortiori, the plaintiff was injured because, as a matter of mathematical formulas expressing an economic theory, a hypothetical PFMN should raise fees and prices on every transaction. *Cf.* Ans.8, 26-27. Allowing such "proof" would effectively eliminate the burden of proving impact, an element of a Sherman Act claim. Pet.12. If an individual plaintiff could not use such evidence to prove her case, then it is not capable of proving classwide injury either. *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 455 (2016).

That is particularly true here, where plaintiffs' theory involves a four-step causal chain between Amazon's alleged conduct toward sellers and class members' alleged injury (Pet.11-12); Amazon's challenged conduct does not have the same characteristics as the hypothetical PMFN assumed in the model (Pet.14-16); numerous individualized differences cause different outcomes at each step, including price decreases (Pet.17-19, 22-25); and undisputed evidence shows that sellers do not uniformly reduce prices if fees are reduced, as Pathak's model wrongly assumes (Pet.17-19).

Plaintiffs' counter-arguments fail. They say Pathak's model is not "an entirely theoretical model" because Pathak applied it to 34 billion transactions and to model variants. Ans.22-23, 25. That is a non sequitur. Pathak merely entered numbers into algebraic formulas to spit out supposed "price increases." But the formulas are based on theoretical assumptions that always lead to a showing of higher prices, and those assumptions have not been empirically validated as reliable indicators of real-world pricing relationships. Likewise, when a "variant" of the model, Ans. 25, always reaches the same conclusion, this only illustrates that algebraic formulas are capable of always reaching the same conclusion. Pathak admits his model is a "game theoretic model," Dkt.307 ¶ 20, and "deterministic," Dkt.322 at 315:11-316:17.

Plaintiffs incorrectly claim that Pathak "corroborated" the model's assumptions through regression analyses. Ans.23. Pathak admits the regressions were not used "to calculate my counterfactual fee or price estimates." Dkt.307 ¶339. Moreover, the regressions masked significant price variation by reporting *average* prices for product categories; there was *no* price decrease for multiple subgroups—a finding that contradicts, not corroborates, the model's showing price increases on every transaction. Pet.18-19. Plaintiffs have no response. Nor can they credibly dispute that the model is contradicted by Pathak's acknowledgment—which the district court accepted—that focal-point pricing means that

"referral fees are not always passed on to class members." Ans.26; *see also* Pet.App.24.

Plaintiffs also run away from Pathak's report—and the district court's decision—when unable to defend key assumptions. As recited by the district court, plaintiffs' model treats Amazon's SC-FOD as a PMFN because merchants may "raise their prices off Amazon to lower the threshold price needed to gain the Buy Box," thereby "preventing competition on price and raising fees." Pet.App.16 (quoting Doc.262 ¶172). But Amazon showed that sellers typically *cannot* "gain the Buy Box" by raising off-Amazon prices because SC-FOD overwhelmingly looks at off-Amazon prices of *Select Competitors*, not of third-party sellers themselves. Pet.7-8, 15. The Answer has no response and wrongly pretends that was "not the purpose of the model or Plaintiffs' factual theory of harm." Ans.25.

In short, plaintiffs' model glosses over variation and finds impact where none exists. Whether such a model is legally capable of satisfying Rule 23 is a fundamental issue warranting immediate review.

## B.   The District Court's Attempt To Modify The Class Definition Highlights The Problems The Model Creates That Warrant Review.

The district court effectively recognized that, by ignoring focal-point pricing, plaintiffs' model generated false positives—finding increased prices where none could exist for 12.7% of the class for that reason alone.

7

Pet.App.23. So the court limited the class to consumers with five or more purchases, thinking that five was "enough purchases to have overpaid on at least one of them." Pet.App.24-25. That modification only concedes and does not solve the problems with using a theoretical model that finds injury and damage for every transaction, including those that could not have been injured, contravening Article III and *Comcast*. Pet.19-22.

Plaintiffs' waiver argument is baseless. Ans.14. The modified class definition has the same fundamental problem raised in Amazon's opposition to the initial definition: the class has uninjured members without any feasible way to identify them. Dkt.232 at 23, 34-36. Moreover, plaintiffs suggested the modified class definition in their reply brief, and neither plaintiffs nor the Court raised the revised class at oral argument, so Amazon had no reason to think the court was considering it. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) (arguments first raised in reply need not be considered). The problems with the modified class are preserved and ripe for review, and plaintiffs have no credible response to them.

**First**, plaintiffs provide no response to the fact that five transactions is not the dividing line between injured and uninjured class members; it's a rough probabilistic assumption or Trial by Formula rejected in *Dukes*. Pet.20.

**Second**, plaintiffs do not grapple with the Article III problem with the revised class definition. Even accepting Pathak's probabilistic

assumptions, the class has more than one million uninjured class members attributable to focal-point pricing alone, and untold other uninjured class members who, among other reasons, paid lower—not higher—prices because of the challenged conduct. Article III precludes awarding relief to *any* uninjured class members. *TransUnion, LLC v. Ramirez*, 594 U.S. 413, 431 (2021). That is an intractable problem here, because neither plaintiffs nor the district court have offered a way to identify the uninjured and winnow them out with common evidence.[4]

Plaintiffs protest that Pathak did not "concede" that any consumers were uninjured and merely made "conservative assumptions" that focal-point prices may not be impacted. Ans.17. That is revisionist history. Pathak raised focal-point pricing in his opening report, acknowledging (in the paragraph quoted in the court's opinion) there are transactions where Amazon could credibly claim that the seller would not lower its price in response to a lower referral fee. Pet.App.24 (citing Dkt.262 ¶387). Pathak made the allegedly "conservative" assumptions about how many transactions were not impacted because he had no "straightforward way" to identify them. Dkt.262 ¶¶385-386.

---

[4] Amazon did not "accept[]" that 5-6% of uninjured class members is "permissible." *Contra* Ans.16. Amazon's point was that plaintiffs' original class definition exceeded even what other circuits have suggested as an upper limit. Dkt.232 at 23.

**Third**, plaintiffs cannot avoid that there is now a mismatch between their damages model and their liability theory. Pet.21-22. A model that finds inflated prices on transactions where prices would not have been lower absent the PMFM is not "directly linked to [plaintiffs'] theory of liability." Ans.15; *see also Comcast*, 569 U.S. at 37-38 (methodology cannot satisfy Rule 23 if it "identifies damages that are not the result of the wrong" and where elevated prices could exist for reasons unrelated to challenged conduct).

Plaintiffs miss the point by claiming that consumers with at least five purchases "would have "made '*at least one* purchase above the predicted but-for price.'" Ans.15 (quoting *Olean,* 31 F.4th at 672 (emphasis added by Answer)). That doesn't solve the mismatch: Even assuming "at least one" purchase involved an inflated price, plaintiffs' model awards damages on *every* purchase made by the class member—even if four out of five purchases were not impacted. That approach inflates class-wide damages and leaves no practical way for Amazon to contest with individual evidence which transactions were impacted (or whether a given class member actually had even one impacted purchase). Nothing in *Olean* blessed such a model, and such an interpretation would create a circuit split with *In re Asacol Antitrust Litigation*, 907 F.3d 42 (1st Cir. 2018). Pet.21-22.

## II. PLAINTIFFS CANNOT ESCAPE THE VARIATION AND INDIVIDUAL INQUIRIES RAISED BY THEIR THEORY OF LIABILITY AND MULTI-STEP CAUSAL CHAIN.

Plaintiffs' model is merely a means of papering over the variation raised at each step of their theory, starting with the first step. Although the Answer refers, in the singular, to "an anti-discounting ('parity') policy" (Ans.6) or "a PMFN policy" (Ans.17), in reality plaintiffs' class certification motion and expert analyses rely on a combination of different policies, practices, communications and seller responses that varied over time, in form, in application—raising individual inquiries that defy class treatment.

The Answer does not deny that variation. Plaintiffs cite an initial "Price Parity Clause" in the seller agreement, but they do not dispute that clause (in addition to being irregularly enforced) was removed in 2019, and thus **58% of third-party sellers** did not sell a product on Amazon while the clause was in effect. Dkt.233, Ex.2. How the clause could have impacted prices paid by class members who purchased from those sellers is unexplained.

Plaintiffs next cite SC-FOD. Ans.21 n.4. But as noted, this is not a price "parity" policy. It is a price-competitiveness practice that encourages sellers to *lower their on-Amazon prices* to match off-Amazon prices charged by *other* sellers ("select competitors").

Therein lies the problem. Because SC-FOD and other existing policies and practices are not actual parity policies, to show their alleged

11

*de facto* effect, plaintiffs must resort to *non-common evidence*, such as anecdotal declarations from a small number of individual sellers; a blog post (which sellers may not have seen and which plaintiffs mischaracterize); and other policies (ASB and MFPP) that (i) also are not price parity policies and (ii) do not apply classwide. Plaintiffs repeatedly cite evidence that Amazon communicated a desire for lower prices in the Amazon store and to create customer trust, to then argue that 2.5 million sellers would respond by increasing prices. But competitiveness and parity are not the same. The district court's certification based on this non-common evidence (Pet.App.11-22) is indeed comparable to *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), where a facially non-discriminatory policy was alleged to create a discriminatory culture affecting employees in particular situations.

Plaintiffs' rejoinder that their theory focuses only on "platform-versus-platform competition (*e.g.*, Amazon versus Walmart)" and does not require complete compliance (Ans.17-18) misses the mark. Plaintiffs must prove their alleged *de facto* policy in the first instance. Further, Plaintiffs cannot—merely by fiat—ignore the highly variable channels and competitive conditions under which 2.5 million different sellers operate and 237 million products are sold. That variation goes to the heart of the liability question (whether Amazon's practices have an anticompetitive effect on seller conduct) and causal chain (whether the practices resulted in higher prices paid by consumers). Plaintiffs cite no

case certifying an antitrust class action based on an alleged *de facto* policy or involving such varied policies and a multi-step causal chain.[5] And *Wal-Mart* precludes certifying a class on the premise that Amazon "will not be entitled to litigate its statutory defenses to individual claims." *Wal-Mart*, 564 U.S. at 367.

## CONCLUSION

Amazon requests that the Court grant the Petition.

Dated: September 9, 2025

Respectfully submitted,

By: */s/ David R. Carpenter*
David R. Carpenter
Collin P. Wedel
SIDLEY AUSTIN LLP
350 South Grand Avenue
Los Angeles, California 90071
Telephone: 213-896-6000
drcarpenter@sidley.com
cwedel@sidley.com

Eamon P. Joyce
Ausjia L. Perlow
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
ejoyce@sidley.com

---

[5] Plaintiffs' reliance on *In re Valve Antitrust Litig.*, 2024 WL 4893373, (W.D. Wash. 2024) (Ans.22), is distinguishable, because it focused on a single express parity policy and because it was brought by video game developers and sellers who *paid* the allegedly inflated commission (not consumer end-users).

aperlow@sidley.com

Kathleen Mueller
SIDLEY AUSTIN LLP
1501 K Street NW
Washington, DC 20005
kmueller@sidley.com

Karen L. Dunn
William A. Isaacson
Amy J. Mauser
Kyle Smith
DUNN ISAACSON RHEE LLP
401 Ninth Street, NW
Washington, DC 20004-2637
kdunn@dirllp.com
wisaacson@dirllp.com
amauser@dirllp.com
ksmith@dirllp.com

Meredith Dearborn
DUNN ISAACSON RHEE LLP
345 California Street
Suite 600
San Francisco, CA 94104-2671
mdearborn@dirllp.com

*Attorneys for Defendant-Petitioner*

## CERTIFICATE OF COMPLIANCE

This brief complies with Circuit Rule 32-3 because, excluding the parts of the document exempted by Rule 32(f) of the Federal Rules of Appellate Procedure, it contains 2,785 words, which, when divided by 280, does not exceed the 20-page limit designated by Rule 5-2(b). The brief also complies with the typeface and typestyle requirements of Rules 32(a)(5)–(6) of the Federal Rules of Appellate Procedure because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

Dated: September 9, 2025          Respectfully submitted,


                                  By: */s/ David R. Carpenter*
                                      David R. Carpenter

                                      *Attorney for Defendant-Petitioner*

## CERTIFICATE OF SERVICE

I hereby certify that on September 9, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Dated: September 9, 2025      Respectfully submitted,

By: */s/ David R. Carpenter*
    David R. Carpenter

*Attorney for Defendant-Petitioner*